[Civ. No. 10542.   Third Dist.   Mar. 29, 1963.]

SUTTER YOUTH ORGANIZATION, INC., Plaintiff and Respondent, v. HILDA BORSEN, Defendant and Appellant.

John J. Cordano and Reynold J. Gualco for Defendant and Appellant.

Hewitt & McBride for Plaintiff and Respondent.

SCHOTTKY, J.—Plaintiff, Sutter Youth Organization, Inc., commenced an action against defendant to reform a deed to plaintiff's predecessors in interest so as to include in said conveyance all of the right, title and interest of defendant in and to certain community oil and gas leases. Issue was joined and following a trial the court found "that by mutual mistake of the parties to said deed, said Deed failed to include the interest of said grantor in and to the Community Oil and Gas Leases. . . ." Judgment was entered that the original deed and the corrective deed "be . . . reformed and corrected according to the real intent of the parties" to include the interest of the grantor in and to the community oil and gas leases.

Defendant has appealed from the judgment and states that "The sole question raised by this appeal is whether a deed can be reformed by a subsequent grantee in connection with a matter that was never agreed upon or discussed at any time by the parties to the deed." Plaintiff in reply takes issue with this statement of defendant and states that the real question is: "Is there substantial evidence to sustain the trial court's finding that at the time defendant executed and delivered her deed to plaintiff's predecessors in interest, all parties intended that all of defendant's interest in the property, together with rents, royalties and rights under the community oil and gas leases, were to be included?"

Before discussing the contentions of the respective counsel, we shall summarize the evidence as shown by the record.

On February 27, 1956, Wayne Catlett, the predecessor in interest of the plaintiff, Sutter Youth Organization, Inc. (hereinafter called Sutter) entered into an agreement prepared by Catlett's attorney, McBride, with Mrs. Borsen to purchase certain real property in Sutter County. A deed was thereafter executed. It was discovered later that the description of the property sold was erroneous and Mrs. Borsen and Catlett returned to the office of the latter's attorney where the error was explained to Mrs. Borsen. According to the attorney's testimony, Mrs. Borsen for the first time said that she wanted to reserve the mineral rights in the property. The attorney then testified as follows: " 'Mrs. Borsen, this is the first time you have ever mentioned mineral rights.' And I said,—I showed her the memorandum

of agreement, that is marked Plaintiff's Exhibit 1, I said, 'There is no reservation of mineral rights in that agreement. And if you had intended to reserve them I would have specifically reserved them in the agreement itself.' I also showed her the deed that we wished to have corrected and I said, 'Now Mrs. Borsen, there isn't any mention in that deed dated September 3, 1956, of a reservation of mineral rights. And if you had intended to reserve them, I would have specifically reserved them in the deed itself.' I said, 'You know very well, Mrs. Borsen, that you intended to convey the mineral rights and all of your interests in that property, and that Mr. Catlett expected to get all of your interests in the property.' "

After this conversation Mrs. Borsen signed the corrected deed. Again, this deed did not contain a reservation of mineral rights. Later, in 1957, the Catletts conveyed the property to Sutter. This deed, too, did not mention the leases.

In 1959 Sutter consulted its attorney in regard to collecting royalties under a community oil and gas lease. After some correspondence with one of the lessees the attorney learned that an interest in a community oil and gas lease does not automatically pass by deed unless it is specifically assigned therein. A request was made to Mrs. Borsen to assign her interest in the community lease but she refused.

At the time of the original agreement nothing was said about the community leases, though the parties knew of the existence of such leases. Catlett just assumed that the oil and gas rights went with the property if they were not specifically mentioned. At the time Mrs. Borsen signed the corrected deed Catlett also told her he had expected to get the gas and oil rights.

Mrs. Borsen testified that there was no mention of oil and gas leases at the time of the original agreement but about a year afterwards Catlett asked her if there were oil and gas leases and she replied, "Yes, but I didn't sell you the gas leases."

On this testimony the trial court ordered the deed to Catlett reformed to conform to the real intent of the parties that the royalties under the oil and gas leases should pass by the conveyance. (Catlett agreed to turn over such rights to Sutter.)

As we view this appeal, it involves primarily the question of whether or not the evidence sustains the trial court's findings.

■ Appellant lays great emphasis on the rule that the transfer of an interest in a community oil and gas lease can only be conveyed by a specific transfer of the interest. (*Tanner* v. *Title Ins. & Trust Co.*, 20 Cal.2d 814, 821 [129 P.2d 383].) Since the deed did not specifically transfer the interest, reformation to express the intent of the parties is a proper remedy if it were the intent of the parties to transfer the interest. (*Nutting* v. *Raub*, 183 Cal.App.2d 503 [7 Cal. Rptr. 227].)

As stated in *Bailard* v. *Marden*, 36 Cal.2d 703, 708-709 [227 P.2d 10], "Section 3399 of the Civil Code provides that when, because of fraud or mistake, '. . . a written contract does not truly express the intention of the parties, it may be revised . . . so as to express that intention. . . .' The purpose of reformation is to effectuate the common intention of both parties which was incorrectly reduced to writing. ■ To obtain the benefit of this statute, it is necessary that the parties shall have had a complete mutual understanding of all the essential terms of their bargain; if no agreement was reached, there would be no standard to which the writing could be reformed.

"Otherwise stated, '[I]nasmuch as the relief sought in reforming a written instrument is to make it conform to the real agreement or intention of the parties, a definite intention or agreement on which the minds of the parties had met must have pre-existed the instrument in question.' (45 Am. Jur. § 7, p. 586; *Holmes* v. *Anderson*, 90 Cal.App. 276 [265 P. 1010]; 5 Williston, Contracts [rev. ed.], § 1548, p. 4339; Rest., Contracts, § 504, comment b.) Our statute adopts the principle of law in terms of a single intention which is entertained by both of the parties. 'Courts of equity have no power to make new contracts for the parties, . . . [N]or can they reform an instrument according to the terms in which one of the parties understood it, unless it appears that the other party also had the same understanding.' (22 Cal.Jur. § 2, p. 710.) If this were not the rule, the purpose of reformation would be thwarted."

■ We are convinced that the evidence supports the following statement in the trial court's memorandum opinion: "It is clear that a mistake occurred. The interest in the gas lease was intended to be conveyed by the grant deed and the corrected grant deed."

"The Civil Code defines a mistake of law as one that arises

from (1) a misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake, . . .'' [42 Cal.Jur.2d, § 29, p. 613.)

''By mutual mistake is meant a situation where both parties share the same misconception; it makes no difference who wrote the instruments to be reformed so long as all parties were in common mistake as to what was contained therein.'' (*Renshaw* v. *Happy Valley Water Co.*, 114 Cal.App.2d 521 [250 P.2d 612].)

In an action to reform an instrument because of fraud or mistake it is for the trial court to determine whether or not plaintiff has proved his case by clear and convincing evidence, and upon appeal the trial court's decision upon conflicting evidence is conclusive.

We believe that the trial court could properly infer from the evidence hereinbefore set forth that the interest of appellant in the community oil and gas lease was intended to be conveyed by the grant deed and the corrected grant deed.

If appellant did not intend to convey her interest in the community oil and gas leases, it is difficult to understand why she executed the corrective deed. She had just been informed by the attorney who prepared the various instruments that in order to reserve the mineral rights the reservation must appear in the instrument. It is true that this information was erroneous, but the parties believed it to be true. We agree with respondent that from the act of appellant in signing the corrective deed it may be inferred that at the time of the original transaction the intent of both parties was that the leases be transferred. As we view the matter, the evidence presented an issue of fact as to the intention of the parties and the determination of that issue in favor of respondent is supported by the record.

No other points require discussion.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.